**Entered on Docket**
**October 18, 2017**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

**Signed and Filed: October 18, 2017**




DENNIS MONTALI
U.S. Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| In re:<br><br>KONSTANTIN KUPFER and MARGARITA KUPFER,<br><br>Debtors. | )<br>)<br>)<br>)<br>)<br>) | Case No. 13-31611 DM<br><br>Chapter 11 |

**MEMORANDUM DECISION**

**REGARDING APPORTIONED ATTORNEY'S FEES AND COSTS**

I. INTRODUCTION

Before the court is the issue of apportioning compensable (uncapped) and non-compensable (capped) attorney's fees and costs stemming from a breach of contract dispute. For the following reasons, the court will fix the uncapped fees and costs in the amount of $170,436.40, leaving capped, and therefore disallowed under section 502(b)(6)[1], fees and costs totaling $23,747.78.

---

[1] Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

## II. RELEVANT FACTS

The creditors KARIM SALMA and ROBERTA SALMA, as trustees of the Salma Family Trust; LINDSEY S. BRUEL; RIYAD R. SALMA; and LAITH K. SALMA (collectively, the "Salma Creditors") and debtors KONSANTAIN KUPFER and MARGARITA KUPFER (collectively, the "Debtors") were commercial landlord and tenants, respectively.

In state court, Salma Creditors, represented by Phillip S. Keith, Esq., argued Debtors breached two long-term commercial leases and sued for damages. In response, Debtors filed counterclaims and sought damages. The parties entered arbitration in October 2012, and the arbitrators found in favor of Salma Creditors, awarding them $1,481,583.18 (hereafter, the "Arbitration Award"). The Arbitration Award included damages of $1,287,399.00 (the "Damage Award") and an additional award totaling $194,184.18 (the "Expense Award"). The Expense Award was comprised of attorney's fees of $137,250 (the "Disputed Fees") and costs of $56,934.18 (the "Disputed Costs"). The Disputed Costs consist entirely of fees for the arbitrators' services.

Debtors filed for bankruptcy on July 16, 2013. Thereafter, Salma Creditors filed a proof of claim for the Arbitration Award. All amounts owed to Salma Creditors other than the remaining Disputed Fees and Disputed Costs have been paid. Pursuant to an *Order Granting Debtor's Motion For A Stay*



Case: 13-31611 Doc# 310 Filed: 10/18/17 Entered: 10/18/17 16:26:02 Page 2 of 18

*Pending Appeal Or, In The Alternative, Approval Of A Supersedeas Bond* entered on January 29, 2014, the Debtors set aside funds sufficient to cover the Expense Award. Doc. 155. The security, $235,000, is in a blocked bank account.

## III. PROCEDURAL HISTORY

The issue now before the court is limited to which of the Disputed Fees and Disputed Costs are capped by section 502(b)(6) and which are uncapped. When originally presented this issue, the court found that section 502(b)(6) did not cap any amounts and awarded Salma Creditors the entire Expense Award.

Debtors appealed, and the district court affirmed. Debtors appealed again and the Ninth Circuit reversed both courts and remanded the case to the district court, which then remanded to this court.

Upon remand, the parties were afforded a final opportunity to submit arguments.[2] The matter was then taken under submission.

## IV. NINTH CIRCUIT MANDATE

The Ninth Circuit found that under section 502(b)(6), an all-or-nothing approach was not appropriate in determining the allowed amount of Disputed Fees and Disputed Costs. The court

---

[2] The court denies Salma Creditor's Motion to Strike the Surreply. The matter was resolved by a Docket Order entered on September 22, 2017, which gave Salma Creditors the opportunity to reply to Debtors' Surreply.



Case: 13-31611 Doc# 310 Filed: 10/18/17 Entered: 10/18/17 16:26:02 Page 3 of 18

reasoned that factual findings were required to determine which of the amounts requested are capped and which are uncapped:

> "Fees attributable to litigating Creditors' claims for future rent are capped, because such claims would not arise were the leases not terminated. But the arbitration award also included damages for *past* rent, which Creditors could claim independent of termination; the fees attributable to that portion of the litigation are not capped. The parties also litigated Debtors' numerous counterclaims. To the extent that the counterclaims concerned ordinary alleged breaches, independent of a lease termination, the associated fees and costs are not capped, either.
>
> On remand, the . . . court first must categorize all claims as either directly resulting from termination of the leases, or not. The former are capped; the latter are not. The court then must apportion the associated fees and costs accordingly."

*Kupfer v. Salma (In re Kupfer)*, 852 F.3d 853, 859 (9th Cir. 2016)(emphasis in original).

V. DISCUSSION[3]

The direction from the Ninth Circuit is easy to carry out, if applied literally. First, the court has been told to "categorize all claims as either directly resulting from termination of the leases, or not." The Final Arbitration Award discloses how the arbitrators calculated the Damage Award. For Suite 106, they awarded unpaid rent, additional rent, late charges and interest in the amounts of $241,893.00 and $140,768.65, for a total of $382,661.65. Then they added

[3] The following discussion constitutes the court's findings of facts and conclusions of law. Fed. R. Bankr. P. 7052 (a).



Case: 13-31611 Doc# 310 Filed: 10/18/17 Entered: 10/18/17 16:26:02 Page 4 of 18

discounted future rent in the amount of $495,805.00. See Final Arbitration Award at 6:21-7:1.

For Suite 205, they awarded rent and interest in the amount of $112,483.00. Then they awarded discounted future rent in the amount of $296,450.00, for a total of $408,933.00. See Final Arbitration Award, 8:1-7.

From the foregoing the total for unpaid rent and related liability for Suites 106 and 205 is $495,144.00. The total for lost future rent is $792,255.00.

The Ninth Circuit said that, after determining how to categorize the damages, the court must “apportion the associated fees and costs accordingly.” Returning to the lease damages, the lost future rent portion represents 61.539 percent of the Damage Award ($792,255.00 divided by $1,287,399.00). Applying that same percentage (61.539%) to the Disputed Fees and the Disputed Costs would result in apportioned totals of $84,462.28 in attorney’s fees and $35,036.72 in costs and the balance of $52,787.72 in uncapped attorney’s fees and $21,897.46 in uncapped costs, as applicable to the back rent and related liabilities.

What appears to be a simple, literal, and mathematical calculation, which the Ninth circuit could have done itself since the arbitrators’ reasoning is clear, would have disposed of the matter. However, that is too facile a disposition and does not comport with the reality of the legal work performed

by Mr. Keith for Salma Creditors. Both sides instead argue that, as to the Disputed Fees, there must be an analysis of the actual work performed to see if it relates to the future rent or the past rent and to other issues that were tried. As to the Disputed Costs, the Debtors' use the arbitrators' move out dates as a demarcation to allocate uncapped and capped costs; Salma Creditors argue that none of those costs should be capped.

A. Disputed Fees

Salma Creditors concede a capped amount of $9,945.00 of the Disputed Fees. The remaining $127,305 must be apportioned as uncapped or capped.

1. Burden of Proof

The parties agree the claimant has the burden of proving what portions of its claims are capped and uncapped ("The Salma Creditors have the burden of proof. In fact, they've embraced that, they've agreed they have the burden of proof and they offered to go forward and . . . make the motion."). Hearing Audio, Doc. No. 293, at 5:21. However, once the claimant has met the burden of proof, the court must be persuaded to find otherwise. The burden of persuasion shifts and the objecting party therefore must show that the proof of claim is subject to being capped. *In re Intern. BioChemical Indus., Inc.*, 521 B.R. 395, 399 n.2 (Bankr. N.D. Ga. 2014).

Salma Creditors have made a prima facie showing by proffering declarations and exhibits to demonstrate a majority of the fees dealt with past rent matters. To upset this showing, Debtors must persuade the court that all Disputed Fees were related to termination issues. Absent a showing that the Disputed Fees are capped, the court has no alternative but to uphold the prima facie showing that they are uncapped.

2. Inadmissibility of Records

Apart from the evidentiary issues discussed below, the Ninth Circuit left the court with a difficult task and, to state it bluntly and simply, the court needs all the help available to carry out that task.

In their *Motion to Strike Supplemental Declaration of Philip S. Keith*, Doc. 290, Debtors object on grounds of relevance, Federal Rule of Evidence 403, hearsay, and Federal Rules of Bankruptcy Procedure 9006(d). They contend Mr. Keith's "shifting recollection" makes him an unreliable and non-credible witness. Doc. 290, p. 1:26-29, 2:1, 4: 1-16.

First, Debtors argue that Mr. Keith's Second Supplemental Declaration and attached exhibits "G" and "H" are irrelevant because Salma Creditors introduced them to show the time records were entered by 2015. Instead Salma Creditors needed to show the records were kept contemporaneously. Doc. 290, p. 2: 5-14. Second, the inability to show the records were kept contemporaneously ultimately lends to Salma Creditors'



Case: 13-31611 Doc# 310 Filed: 10/18/17 Entered: 10/18/17 16:26:02 Page 7 of 18

inability to establish hearsay exceptions. Doc 290, p. 2:21-28. Third, they argue under Federal Rule of Bankruptcy Procedure 9006(d) that an affidavit in support of a motion must be filed with the motion. The introduction of the exhibits is unfairly prejudicial because Salma Creditors attempt to bolster the record with additional evidence that could have been, but was not, offered. Doc. 290, p. 3:18-24.

Salma Creditors contend that the *Motion to Strike* is meritless. They argue that the exhibits are relevant because they show the time records were in existence no later than May 1, 2013. Doc. 291-2, p. 9:25-28, 10:1-6. Consequently, the time records are inherently contemporaneous; otherwise Salma Creditors would not have been able to request an award of attorney's fees from the arbitrators. Debtors never challenged the motion during arbitration and ultimately Salma Creditors were awarded the Disputed Fees based upon 305 hours of Mr. Keith's recorded time by the arbitrators. Additionally, they argue the Debtors have failed to demonstrate the court will be confused on the issue. The court is not confused and, as explained below, all of the Debtors' objections to Mr. Keith's time records are overruled.

a. <u>Relevance</u>

Evidence is relevant if it has *any* tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. Fed. R.

Evid. 401. Mr. Keith's time records assist the court in its determination of capped or uncapped fees. Therefore, they are relevant.

b. Hearsay

Hearsay is defined as an out-of-court statement offered for the truth of the matter. Fed. R. Evid. 801(c). The policy reasons for the exclusion of hearsay are to ensure indicia of reliability. The matters asserted here are the amount of hours Mr. Keith spent on past rent or termination issues.

First, Debtors' contention that the time records are not sworn testimony are summarily dismissed. Doc. 286, p. 7:6-7. Both iterations of Salma Creditors' exhibits regarding time records were accompanied by Mr. Keith's sworn declarations. Further, there is no evidence to suggest, and it has not been argued, that Mr. Keith's work was manufactured or not performed. Moreover, neither the Debtors nor the arbitrators took issue with the amount of work done by Mr. Keith before this case was commenced. Therefore, the truth of the matter is not in question. On these bases alone, the evidence is admissible.

Second, Debtors take issue with the contemporaneous nature of the exhibit.

i. Business Records Exception

The party seeking to admit a business record under the exception bears the burden of proof. To satisfy the business

records exception the document must be: (1) created at or near the time of the event, not in preparation for litigation, by someone with personal knowledge; (2) a regular practice to create and keep such a document; (3) done by a custodian; and (4) defendable against lack of trustworthiness. Fed. R. Evid. 803(6). The record does not indicate any of these requirements are missing.

When a party relies on a record contemporaneously prepared while acting under a business duty of care and accuracy, there are circumstantial guarantees of trustworthiness in the record. *United States v. Licavoli*, 604 F.2d 613, 622 (9th Cir. 1979). However, "the regular course of business must have been to make such records contemporaneously or within a reasonable time thereafter." *United States v. Anderson*, 447 F.2d 833, 838 (8th Cir. 1971). "It is the circumstances under which the records are recorded, kept, maintained, and used that give the reliability essential to the law's conclusion." *State v. Robinson*, 272 Neb. 582, 587, 724 N.W.2d 35, 48 (2006).

Mr. Keith used Timeslips software to keep records for his business. There is no question that he understands the methods of the software because he used the software for the duration of his work on the matter. With that, Mr. Keith can be considered a custodian. Additionally, it is his regular practice to keep records of his time spent on clients' matters. Doc. 289, p. 2:22-24. There is nothing in the record to

suggest the records were not made within a reasonable time because they were submitted no later than Salma Creditors' submission of attorney's fees to the arbitrators. Mr. Keith's fees are allowable only if he can provide a "receipt" of the work he has done and the time apportioned to each task. Accordingly, he is only able to run his business if he keeps accurate records. These factors lead to circumstantial indicia of reliability.

After scrutinizing the record, the court is satisfied that the entries provided by Mr. Keith satisfied the business records exception.

ii. Past Recollection Recorded

A document is admissible as past recorded recollection if (1) the witness once had knowledge about the matters in the document, (2) but now has insufficient recollection to testify fully and accurately, and (3) the record was made at a time when the matter was fresh in the witness' memory and reflected the witness' knowledge correctly. *United States v. Patterson*, 678 F.2d 774, 778 (9th Cir. 1982). The past recollection recorded exception allows for the document to assist the declarant and can be used for the truth of the matter, but is not admitted in to evidence. Fed. R. Evid. 803(5).

Mr. Keith has knowledge about the proceeding since he represented Salma Creditors. Understandably, he was unable to recall minute detail from his work four to six years prior.



Case: 13-31611 Doc# 310 Filed: 10/18/17 Entered: 10/18/17 16:26:02 Page 11 of 18

However, he did recall the general nature of proceedings because he was able to refer to his Timeslips records: "It's not a guess. It's my recollection that I did not spend a significant amount of time on future rent issues." Keith Depo., 84:20.

The exception allows Mr. Keith to review his records and testify to the nature of his work.

c. Fed. R. Evid. 403

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Fed. R. Evid. 403. "The rule articulates the judicial power to exclude relevant evidence because of prejudicial dangers or considerations." *United States v. Hankey*, 203 F.3d 1160, 1164 (9th Cir. 2000). Its principal design is to promote the "twin policies of assuring 'correct' factual determinations in individual cases and actual and perceived fairness in the judicial process as a whole." *United States v. Robinson*, 544 F.2d 611, 616 (2d Cir. 1976), on reh'g, 560 F.2d 507 (2d Cir. 1977), *citing* Dolan, *Rule 403: The Prejudice Rule in Evidence*, 49 So.Cal.L.Rev. 220, 226-30 (1976).

The probative value of the records is high because it provides for dates, descriptions, and time allotted to each



Case: 13-31611 Doc# 310 Filed: 10/18/17 Entered: 10/18/17 16:26:02 Page 12 of 18

task. Any perceived danger from this record is low because the Debtors were afforded an opportunity during the arbitration to contest any of the information within the document. They did not and still do not contest the amount of work, or the work itself, performed by Mr. Keith. The probative value substantially outweighs any danger.

d. <u>Fed. R. Bankr. P. 9006(d)</u>

Federal Rule of Bankruptcy Procedure 9006(d) provides that if a motion is supported by affidavit, the affidavit shall be served with the motion. The exhibits in question were submitted after the originally filed motion. The court concludes that Debtors' were not denied a fair opportunity to reply. Any harm that Debtors' claim to encounter is harmless.

3. Apportionment of Disputed Fees

Salma Creditors made a case for uncapped Disputed Fees less the amount they concede as capped ($9,945.00). Debtors argue the entirety of the Disputed Fees should be capped because this is a termination action and that all counterclaims were not independent of termination. Doc. 296.

Salma Creditors rely on *In re El Toro Materials Co.*, which used a simple test to determine whether damages result from the termination of a lease: "Assuming all other conditions remain constant, would the landlord have the same claim against the tenant if the tenant were to assume the lease rather than rejecting it?" *Saddleback Valley Cmty. Church v. El Toro*

*Materials Co. (In re El Toro Materials Co.)*, 504 F.3d 978, 981(9th Cir. 2007). They argue none of the counterclaims sought termination of the leases and were only an attempt to collect money from Salma Creditors. Doc. 301.

In accordance with the Ninth Circuit's mandate to apportion Disputed Fees, the court scrutinized Mr. Keith's time records and apportioned the Disputed Fees as best as it could. In doing so, the court created an attachment that lists each slip listing indicated by: identification number, date, time allotted to and description of the task.

The attached sheet shows a total of 324.95 hours spent by Mr. Keith on the matter. The court began by first attempting to resolve the discrepancies in hours and removed any non-legal work. This accounted for 13.5 hours and is indicated by bold font and darkened boxes, leaving 311.45 hours. Unable to account for the additional hours, the court then limited the maximum number of hours to 305, the total allowed by the arbitrators. Next, the court went through each description, and using its experience and judgment, resolved the factual issues to indicate what amount of time would be attributed to "termination of the leases, or not" to calculate the capped and uncapped fees. *In re Kupfer*, 852 F.3d at 859. The attached sheet is six columns that follow the format of exhibits presented to the court. They include columns for the date, respective slip listing identification number, uncapped hours,

capped hours, and descriptions. An additional column was added to notify the parties when the court accepted Mr. Keith's capped portion or when the court, after reading the description of work provided, saw fit to cap portions of that time entry. Those are denoted by either "K" or "*," respectively.

The court then took the total hours attributable to work involving capped fees (including the 22.1 hours Mr. Keith identified) and subtracted them from 305 to calculate the hours spent on uncapped matters. Finally, using the allowed hourly rate of $450, it multiplied the hours for the respective entries to arrive at the capped and uncapped fees, namely, capped fees of $16,785 and uncapped fees of $120,465.[4/]

B. Disputed Costs

As mentioned above, the entirety of the Disputed Costs consists of fees for the arbitrators' services.

Salma Creditors advocate for the arbitrators to receive their entire fee for work throughout the arbitration. Salma Creditors proffer that a majority of the calculations for future damages were performed by their broker, John Bruel. Additionally, they argue that, if any future rent calculation was determined by the arbitrators, it was statutorily driven by a perfunctory implementation of California Civil Code § 1951.2.

---

[4/] Note that the uncapped fees are 87.877 percent of the Disputed Fees ($120,465 divided by $137,250).

Debtors argue that using the move out dates would designate 25% of Disputed Costs to past rent issues and the remaining 75% to future rent issues.  Applying the percentages Debtors suggest to the Disputed Costs amounts to $14,233.545 for past rent issues and $42,700.635 for future rent issues. Debtors reason that, once the lease was terminated, only future rent issues remained and effectively all damages from past rent were resolved.

Contrary to Debtors' argument, the parties stipulated to a set-off amount of $5.25 per square foot for Suite 106.  Doc. 276, p. 6:7-10.  The purpose of this set-off amount allowed for the parties to agree on a value for future rent damages Salma Creditors suffered.  Suite 205 was released and therefore a set-off amount was not disputed.  Doc. 276, p. 6:9-10.  Neither party contends future rent issues were not summarily dealt with according to the terms of the leases.  It follows that 75% of the time could not have been afforded to future rent or termination issues and a majority of the time by the arbitrators was spent on past rent issues and affirmative damages sought by Debtors.

The Debtors' arguments concerning the Disputed Costs are not persuasive.  That said, there had to be some time devoted by the arbitrators to hearing testimony or argument about future rent issues, and then deciding as they did.  But there can be little doubt that the vast majority of the arbitrators'



Case: 13-31611    Doc# 310    Filed: 10/18/17    Entered: 10/18/17 16:26:02    Page 16 of 18

time and efforts were attributable to the past rent claims and the disposition of the counterclaims. Under these circumstances and given the instructions from the Ninth Circuit, the fairest way to allocate the Disputed Costs is to do so based on the allocation of the Disputed Fees, namely, 87.77% ($49,971.40) as uncapped and the balance ($6,962.78) as capped.

## VI. CONCLUSION

Following the mandate of the Ninth Circuit, this court finds in favor of Salma Creditors in uncapped Disputed Fees and uncapped Disputed Costs totaling $170,436.40, leaving Debtors with capped Disputed Fees and capped Disputed Costs totaling $23,747.78. The court is concurrently issuing an order consistent with the foregoing.

****END OF MEMORANDUM DECISION****

**Court Service List**

[None]